**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **BMC-THE BENCHMARK MANAGEMENT COMPANY, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **1:05-cv-1149-WSD** |
| **CEEBRAID-SIGNAL CORPORATION, et al.,** | |
| **Defendants.** | |

## <u>ORDER</u>

This matter is before the Court on Defendants' Motion to Dismiss or Transfer Venue [20], Defendants' Motion for Protective Order for Purpose of Staying Discovery [24], Non-Party Fremont Realty Capital's Objection to Subpoena *Duces Tecum* [26], Non-Party FSPP II Georgian Lender's Objection to Subpoena *Duces Tecum* [27], Defendants' Motion for Protective Order Relating to Subpoena *Duces Tecum* to Freemont Realty Capital [28], Defendants' Motion for Protective Order Relating to Subpoena *Duces Tecum* to FSPP II Georgian Lender [29], and Non-Parties Greenberg Traurig, P.A., Greenberg Traurig, Mark Bideau, Howard Bregman and David Layman's Objection to Subpoena *Duces Tecum* [30].

I.      **BACKGROUND**

Plaintiffs BMC-The Benchmark Management Company and BMC-The

Benchmark Equipment Company (collectively, "Plaintiffs") are hotel management

companies.  From August 2002 until August 2004, Plaintiffs managed the Georgian

Terrace Hotel in Atlanta, Georgia (the "Hotel") on behalf of then-owner AGL

Investments No. 2 Limited Partnership ("AGL").  In August 2004, AGL agreed to

sell the Hotel to Defendant Ceebraid Acquisition Corporation ("Ceebraid

Acquisition"), a subsidiary of Defendant Ceebraid-Signal Corporation

("Ceebraid").  Defendants Richard and Adam Schlesinger (the "Schlesingers") are

owners and officers of Ceebraid and/or Ceebraid Acquisition.

In the Summer and Fall 2004, Ceebraid approached Plaintiffs concerning

their continued management of the Hotel after it was purchased by Ceebraid

Acquisition.  Plaintiffs allege that they informed Ceebraid they would not manage

the Hotel under a short-term agreement and were interested only in a long-term

arrangement.  Plaintiffs also allege that Ceebraid's representative promised that, if

Plaintiffs agreed to continue to manage the Hotel after the sale under a short-term

agreement, Ceebraid and Plaintiffs would negotiate in good faith concerning a long-

term management agreement.  Plaintiffs further allege that Ceebraid's

representatives made representations regarding Ceebraid's plans for the Hotel after the sale, including the nature of the operation of the Hotel and Ceebraid's interest in specific amenities.

Plaintiffs allege that, based on these representations, they entered into an agreement with Ceebraid to manage the Hotel for six (6) months (the "Six-Month Agreement") following the anticipated date of the sale of the Hotel.  Plaintiffs drafted the Six-Month Agreement, but allege Ceebraid's representatives delayed in executing it.  On November 1, 2004, Defendant Adam Schlesinger signed the Six-Month Agreement as President of Ceebraid.  The Six-Month Agreement expressly required the parties to negotiate in good faith regarding a long-term management agreement, and contemplated that a long-term agreement would be reached by December 1, 2004, the date expected for the hotel sale to close.

Ceebraid's acquisition of the Hotel was delayed until March 2005.  Prior to the closing, Ceebraid's representatives requested Plaintiffs to provide certain assurances to financial institutions coordinating the purchase of the Hotel.  Plaintiffs allege that, during this time, Ceebraid did not disclose that it intended for the Hotel to be purchased by a single-purpose entity other than Ceebraid Acquisition, nor did Ceebraid forecast its position that the Six-Month Agreement was not enforceable

against it.  Rather, Ceebraid's representatives are alleged to have continued to acknowledge the Six-Month Agreement, including the need to have it subject to assignment and subordination in connection with the sale of the Hotel.

On March 18, 2005, the Hotel was acquired by Defendant CSC Georgian Terrace Limited Partnership (the "CSC Partnership").  The allegations in the Complaint suggest that the CSC Partnership, along with Defendants Georgian Terrace Limited Partnership and CSC Georgian Terrace GP Corporation, was created by the Schlesingers for the purpose of acquiring the Hotel, and that one or more of these entities was substituted for Ceebraid Acquisition prior to the March 2005 purchase.  The relationship between the CSC Partnership and Ceebraid is unclear, and it is also unclear when or how Plaintiffs were advised of the creation of and sale of the Hotel to an entity other than Ceebraid Acquisition.  Following the closing, Plaintiffs' efforts to negotiate a long-term management agreement with Ceebraid failed.  Ceebraid's representatives claimed that the Six-Month Agreement was unenforceable because the CSC Partnership, not Ceebraid or Ceebraid Acquisition, was the new owner of the Hotel.

Plaintiffs filed this action on May 2, 2005.  They allege claims for fraud in the inducement (Count I), fraud (Count II), civil conspiracy (Count III), aiding and

abetting fraud (Count IV), and unjust enrichment (Count V).  Plaintiffs' claims are

asserted against all Defendants, except for their claim for fraud in the inducement,

which is asserted only against Ceebraid, Ceebraid Acquisition and the Schlesingers.

On May 25, 2005, the parties submitted, and the Court approved, a consent

order extending until June 17, 2005, the time for Defendants to respond to the

Complaint.  This consent order expressly provided that discovery may commence

on June 17, 2005.  The Court subsequently entered a second consent order

extending until June 22, 2003, the time for Defendants to respond to the Complaint.

The second consent order reiterated that the parties were permitted to commence

discovery on June 17, 2005.[1]  In late June 2005, consistent with the May 25, 2005

and June 23, 2005 Consent Orders, Plaintiffs served discovery on Defendants as

well as various non-parties alleged to have been involved in the acquisition of the

Hotel.

On June 22, 2005, Defendants filed their Motion to Dismiss or Transfer

("Motion to Dismiss").  On July 18, 2005, Defendants moved for a protective order

---

[1]  The Court notes that Defendants in the first consent order represented that
they would not seek any further extensions for the filing of an answer or responsive
pleadings.  Defendants violated this order when they submitted the second consent
order.

to stay discovery pending a ruling on their Motion to Dismiss.  Defendants

apparently have failed to participate in discovery pending a ruling on their motion.

Defendants also filed several objections and motions for protective order regarding

the discovery served by Plaintiffs.  Each of these motions and objections is now

before the Court for decision.[2]

## II.   DISCUSSION

### A.   Defendants' Motion to Dismiss

#### 1.   *Motion to Dismiss for Failure to State a Claim*

Defendants move to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure for failure to state a claim upon which relief

can be granted.  The law in this Circuit governing motions to dismiss pursuant to

Rule 12(b)(6) is well settled.  Dismissal of a complaint is appropriate only when, on

the basis of a dispositive issue of law, no construction of the factual allegations will

support the cause of action.  Marshall County Bd. of Educ. v. Marshall County

Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  "Although a plaintiff is not held

---

[2]  The Court conducted a telephone conference in this matter on August 5, 2005.  Following the conference, and at the request of the Court, the parties submitted supplemental briefing on certain of the issues raised in Defendants' Motion to Dismiss.

to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist." Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir. 2002), *rev'd on other grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).  The factual allegations set out in the Complaint are accepted as true for the purposes of Defendants' Motion to Dismiss.  See Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).

a.      Fraud in the Inducement (Count I)

Plaintiffs assert a claim for fraud in the inducement against Ceebraid, Ceebraid Acquisition and the Schlesingers.  (Compl. ¶¶ 29-39.)  Defendants move to dismiss this claim on the grounds that (i) Plaintiffs do not allege adequate facts

-7-

from which fraud in the inducement may be inferred; and (ii) Plaintiffs do not plead

fraud with specificity as required by Rule 9(b) of the Federal Rules of Civil

Procedure.  These arguments are without merit.  A claim for fraud in the

inducement requires the same showing as a common-law fraud claim.  See Velten

v. Regis B. Lippert, Intercat, Inc., 985 F.2d 1515, 1523 (11th Cir. 1993).  "In

Georgia, the common law tort of fraud requires five elements:  (1) false

representation by defendant; (2) with scienter, or knowledge of falsity; (3) with

intent to deceive plaintiff or to induce plaintiff into acting or refraining from acting;

(4) on which plaintiff justifiably relied; (5) with proximate cause of damages to

plaintiff."  Worsham v. Provident Companies, Inc., 249 F. Supp. 2d 1325, 1331

(N.D. Ga. 2002); see also Ledford v. Smith, 618 S.E.2d 627, 634 (Ga. Ct. App.

2005).  Rule 9(b) further requires that "the circumstances constituting fraud . . .

shall be stated with particularity."  Fed. R. Civ. P. 9(b); see also United States v.

Lab. Corp. of Am., 290 F.3d 1301, 1310 (11th Cir. 2002).

Here, Plaintiffs allege Ceebraid, Ceebraid Acquisition and the Schlesingers

fraudulently induced Plaintiffs to enter into the Six-Month Agreement by promising

to negotiate in good faith for a long-term agreement following the purchase of the

Hotel.  Plaintiffs allege Defendants made this promise knowing they did not intend

to negotiate a long-term agreement with Plaintiffs following the purchase of the

Hotel, and that Defendants made representations and engaged in other conduct

calculated to cause Plaintiffs to believe the Six-Month Agreement was considered

by Defendants to be enforceable.  The Court finds that these allegations are

sufficient to allege a claim for fraud in the inducement.  See Lively v. Garnick, 287

S.E.2d 553, 557 (Ga. Ct. App. 1982) ("The misrepresentation must involve present

facts or fall within the exceptions for a promise to act in the future made with a

present intention not to perform or a promise about a future event that the promisor

knows will not occur.").  The Court further finds that the allegations satisfy the

Rule 9(b) standard and are sufficient to alert these Defendants to the misconduct

with which they are charged.  See Lab. Corp., 290 F.3d at 1310 ("The particularity

rule serves an important purpose in fraud actions by alerting defendants to the

precise misconduct with which they are charged and protecting defendants against

spurious charges of immoral and fraudulent behavior.") (citations omitted).

Accordingly, Defendants' motion to dismiss Plaintiffs' fraud in the inducement

claim is DENIED.

b.      Fraud (Count II)

Plaintiffs assert a claim for common-law fraud against Defendants for failure to make payment for services performed under the Six-Month Agreement.  (Compl. ¶¶ 40-47.)  "Any breach of contract must arise from the contract, and does not give rise to an action for tort, whether or not such breach was negligent or wilful." ServiceMaster Co., L.P. v. Martin, 556 S.E.2d 517, 523 (Ga. Ct. App. 2001); see also Swyters v. Motorola Employees Credit Union, 535 S.E.2d 508, 510 (Ga. Ct. App. 2000) ("If no liability is claimed except that arising out of a breach of the express terms of a contract, the action lies in contract alone; an action in tort will not lie").  Consistent with this principle, Georgia courts have held that mere failure to pay for services under a contract is not actionable in tort.  See, e.g., Ring v. Williams, 384 S.E.2d 914, 917-18 (Ga. Ct. App. 1989) ("[I]f one promises to pay another a given sum of money by a named day, the contract creates a duty to pay; but a breach of that duty is not a tort.") (citations omitted) (alternation in original). Cf. Equifax v. 1600 Peachtree, LLC, 601 S.E.2d 519, 525-26 (Ga. Ct. App. 2004) ("The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future.  Nor does actionable fraud result from a mere failure to perform promises made.  Otherwise any breach of a contract would amount to fraud.").  Here, Plaintiffs' allegations demonstrate only that one or more

of Defendants failed to pay for services performed under the Six-Month

Agreement.  This alleged conduct, if true, constitutes a breach of the Six-Month

Agreement, but does not give rise to a separate claim for fraud.  Accordingly,

Defendants' motion to dismiss Plaintiffs' fraud claim is GRANTED.

c.      Civil Conspiracy (Count III)

Plaintiffs also assert a claim for civil conspiracy against Defendants, alleging

that they conspired to fraudulently induce Plaintiffs to continue management of the

Hotel under a short-term agreement.  (Compl. ¶¶ 48-51.) Defendants move to

dismiss Plaintiffs' conspiracy claim on the basis of the intra-corporate conspiracy

doctrine, which provides that a corporation "cannot conspire with itself because

employees of a corporation are considered part of the corporate entity."  See

Catlett v. Wyeth, Inc., 379 F. Supp. 2d 1374, 1382 (M.D. Ga. 2004).

It is not clear in Plaintiffs' response whether they dispute that their claims for

civil conspiracy fail with respect to the Shlesingers.  (See Pls.' Resp. to Mot. to

Dismiss at 14.)  Plaintiffs' Complaint alleges that Defendant Richard Schlesinger is

employed by Ceebraid, and that Defendant Adam Schlesinger is employed by

Ceebraid, Ceebraid Acquisition and the CSC Partnership.  Accepting the

allegations in the Complaint as true, the Court concludes that the intra-corporate

-11-

conspiracy doctrine precludes Defendant Adam Schlesinger from conspiring with Ceebraid, and precludes Defendant Richard Schlesinger from conspiring with Ceebraid, Ceebraid Acquisition or the CSC Partnership.  Accordingly, Plaintiffs' claims based on a conspiracy between these sets of Defendants fail as a matter of law.

The Complaint also alleges that the Schlesingers have or had an ownership interest in the other Defendants.  Plaintiffs also argue the intra-corporate conspiracy doctrine does not apply to their claims based on alleged conspiracies among and between the other Defendants, each of whom is a separate corporate entity.  (Id.) Defendants do not address this argument in their reply, and instead contend that Plaintiffs' allegations of civil conspiracy are directed only at Ceebraid, Ceebraid Acquisition and the Schlesingers.  (See Defs.' Reply in Supp. of Mot. to Dismiss at 8-9.)  Absent sufficient information about the nature of the ownership interest the Schlesingers have or had in the other Defendants, the Court cannot find these claims are required to be dismissed at this stage in the litigation. Accordingly, except as noted above, Defendants have failed to demonstrate Plaintiffs' conspiracy claims against Defendants fail as a matter of law.  Their motion to dismiss these claims is GRANTED with respect to any alleged

conspiracy between Defendant Adam Schlesinger and Ceebraid, and any alleged conspiracy between Defendant Richard Schlesinger and Ceebraid, Ceebraid Acquisition or the CSC Partnership, but DENIED with respect to all other Defendants.

### d.    Aiding and Abetting (Count IV)

Plaintiffs assert claims against Defendants for aiding and abetting fraud. (Compl. ¶¶ 52-55.)  Defendants, in a footnote, argue that because Plaintiffs' underlying fraud claims fail as a matter of law, this claim also must be dismissed. (Defs.' Br. in Supp. of Mot. to Dismiss at 3 n.2.)  The Court already has determined that Plaintiffs' Complaint states a claim for fraud in the inducement. See Section II(A)(a), supra.  Thus, Defendants argument fails and their motion to dismiss Plaintiffs' claim for aiding and abetting fraud is DENIED with respect to Plaintiffs' fraudulent inducement claim.

### e.    Unjust Enrichment (Count V)

Finally, Plaintiffs assert a claim for unjust enrichment against all Defendants, alleging that they conferred a benefit on one or more of Defendants by performing management services at the Hotel and that Defendants retained the value of these services without compensating Plaintiffs.  (Compl. ¶¶ 56-59.)    Defendants move

to dismiss this claim on the ground that recovery on an unjust enrichment claim is precluded where the existence of an express contract is established as a matter of law (presumably referring to the Six-Month Agreement).  (Defs.' Br. in Supp. of Mot. to Dismiss at 10.)  This argument is premature.  The existence of an express, binding contract between Plaintiffs and Defendants has not been established. Indeed, it appears from Plaintiffs' allegations that Defendants deny that the Six-Month Agreement is binding with respect to them and thus an unjust enrichment claim may be viable in this case.  Accordingly, Defendants' motion to dismiss this claim is DENIED.

2.   *Motion to Dismiss for Lack of Personal Jurisdiction*

Defendants move to dismiss Plaintiffs' claims against the Schlesingers on the ground that the Court lacks personal jurisdiction over them.[3]  (Defs.' Br. in Supp. of Mot. to Dismiss at 11-18.)  "Where . . . an evidentiary hearing is not held on a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a

_____

[3] Plaintiffs in their initial motion argue personal jurisdiction only with respect to the Schlesingers.  In their supplemental briefing, they also argue the Court lacks jurisdiction over Ceebraid and the CSC Partnership.  (Defs.' Suppl. Br. in Supp. of Mot. to Dismiss at 20-22.)  Because this argument was not raised in Defendants' initial motion, the Court will not consider it.

prima facie case of jurisdiction to survive a motion to dismiss."  Francosteel Corp. v. M/V Charm, 19 F.3d 24, 626 (11th Cir. 1994).  "The court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence."  Paul, Hastings, Jonofsky & Walker v. City of Tulsa, Okla., 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002) (citations omitted).  "Where there are conflicts between the parties' evidence, the court makes all reasonable inferences in favor of the plaintiff."  Id.

"In the Eleventh Circuit, a determination of personal jurisdiction requires consideration of both the Georgia long-arm statute and the Due Process Clause of the United States Constitution."  Paul, Hastings, 145 F. Supp. 2d at 1253; see also Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 747 (11th Cir. 2002) ("In a diversity action, a federal court has personal jurisdiction over a non-resident defendant to the extent permitted by the forum state's long-arm statute.").  The parties here agree that the Georgia long-arm statute, O.C.G.A. § 9-10-91, confers personal jurisdiction to the maximum extent permitted under the Due Process Clause.  (See Defs.' Br. in Supp. of Mot. to Dismiss at 12-13; Pls.' Opp'n to Mot. to Dismiss at 17.).  Thus, the issue for the Court is whether the Court's exercise of

personal jurisdiction over the Schlesingers satisfies the requirements of procedural

due process.[4]

"Due process contemplates two types of jurisdiction over the person:

general and specific jurisdiction."  Paul, Hastings, 245 F. Supp. 2d at 1253; see

also Nippon, 291 F.3d at 747 ("Personal jurisdiction arise from the party's contacts

_____

[4] In reaching their agreement concerning the Georgia long-arm statute, the parties appear to have relied on decisions from the Eleventh Circuit and this Court construing that statute.  (See Defs.' Br. in Supp. of Mot. to Dismiss at 12-13.)  In Innovative Clinical & Consulting Services, LLC v. First National Bank of Ames, Iowa, 620 S.E.2d 352 (Ga. 2005), a decision issued after the parties filed their supplemental briefs, the Georgia Supreme Court addressed the scope of personal jurisdiction that Georgia courts may exercise over non-residents under the Georgia long-arm statute.  The court indicated that federal courts, including this Court and the Eleventh Circuit, were incorrect in concluding that Subsections 2 and 3 of the statute confer jurisdiction to the maximum extent permitted by the Due Process Clause.  See Innovative, 620 S.E.2d at 674 n.2 ("The Eleventh Circuit's interpretation of O.C.G.A. § 9-10-91 is not binding on this Court and it is not necessary for this Court to correct erroneous Federal interpretations of our State's statutes . . . .").  However, the court also concluded that Subsection 1 of the statute, which permits the exercise of personal jurisdiction over a non-resident who "[t]ransacts any business" within Georgia, grants Georgia courts the authority to exercise personal jurisdiction over any non-resident who transacts any business in Georgia "to the maximum extent permitted by procedural due process."  Id. at 355.  Thus, although the parties' agreement concerning the scope of the Georgia long-arm statute may have been undermined by the Innovative court's holding with respect to Subsections 2 and 3, the court's holding with respect to Subsection 1 obviates the need to analyze personal jurisdiction under the Georgia long-arm statute separately here, since it is clear the Schlesingers transacted business within Georgia in connection with the purchase and continued operation of the Hotel.

with the forum state that are unrelated to the claim, or specific, which arise from the party's contacts with the forum state that are related to the claim."). The due process requirements for general jurisdiction are more stringent than for specific jurisdiction. Paul, Hastings, 245 F. Supp. 2d at 1253 (citing Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000)). A party is subject to general jurisdiction only when it has "continuous and systematic" contacts with the forum state. Paul, Hastings, 245 F. Supp. 2d at 1253 (citations omitted). The exercise of specific jurisdiction, on the other hand, complies with due process so long as (1) the party has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. Francosteel, 19 F.3d at 627. In this case, the parties focus on specific jurisdiction as the source of the Court's personal jurisdiction over the Schlesingers.

To show that a party has purposefully established minimum contacts with the forum state, the plaintiff must demonstrate the existence of three factors:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and

> protections of its laws.  Third, the defendant's contacts
> with the forum must be such that the defendant should
> reasonably anticipate being haled into court there.

Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993) (internal

punctuation and citations omitted).  If the plaintiff demonstrates these minimum

contacts, the court must evaluate whether, in light of them, the exercise of personal

jurisdiction would comport with "traditional notions of fair play and substantial

justice."  The factors to be considered in this evaluation are "(1) the burden on the

defendant in litigating the lawsuit; (2) the forum state's interest in adjudicating the

dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the

interstate judicial system's interest in obtaining the most efficient resolution of

controversies; and (5) the shared interest of the states in furthering fundamental

social policies."  Paul, Hastings, 245 F. Supp. 2d at 1258 (citing World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

Having reviewed the arguments and evidence submitted by the parties,

including the sworn declarations and the unrebutted allegations of Plaintiffs'

Complaint, the Court concludes that the due process requirements of specific

jurisdiction are satisfied with respect to the Schlesingers.  The Schlesingers do not

dispute that they have an ownership interest in the Hotel, and that they have traveled

-18-

to Atlanta on numerous occasions in connection with the purchase and

management of the Hotel.  Plaintiffs allege they were induced to continue

management of the Hotel by Defendants' misrepresentations and omissions

regarding the negotiation of a long-term service contract following Defendants'

acquisition of the Hotel and the identity of the entity by which the Hotel would be

acquired.  Plaintiffs also allege that they performed various management services at

the Hotel between Fall 2004 and Spring 2005 on behalf of one or more of

Defendants, but that Defendants failed to compensate them for the value of these

services.

The Court finds Plaintiffs' claims arise out of their management and

operation of the Hotel on behalf of Defendants, and that the Schlesingers' contacts

with this forum relate to these claims.  The Court also finds that the Schlesingers

purposefully availed themselves of the privilege of conducting business activities

within this forum by negotiating for, acquiring and continuing to operate the Hotel,

and that their contacts with this forum were such that they should have reasonably

anticipated being haled into court here, especially with respect to claims arising out

of their operation of the Hotel.  Finally, the Court concludes that the balance of the

five factors listed in <u>World-Wide Volkswagen</u> demonstrates that the exercise of

jurisdiction here would comport substantially with traditional notions of fair play and substantial justice.  Accordingly, Defendants' motion to dismiss Plaintiffs' claims against the Schlesingers for lack of personal jurisdiction is DENIED.[5]

### 3.   *Motion to Transfer*

Defendants move to transfer this case to the United States District Court for the Southern District of Florida.  However, they do not state in their original or supplemental briefing whether they move to transfer this case for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, move to transfer under Section 1404(a), or both.  The Court will address both of these grounds for transfer.

Section 1391 provides that in a civil action founded on diversity of citizenship, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2).  As discussed above, a substantial part of the events giving rise to Plaintiffs' claims

---

[5]  Because the Court finds the Schlesingers' contacts with this State are sufficient to confer specific jurisdiction, it is not necessary for the Court to address whether such contacts are sufficient to confer general jurisdiction.

occurred in the Northern District of Georgia.  The thrust of Plaintiffs' fraud claims is that they were induced to continue management of the Hotel here in Atlanta based on false representations or omissions by Defendants regarding the negotiation of a long-term service contract following their successful purchase of the Hotel. Similarly, Plaintiffs' unjust enrichment claim is based on work they performed in this District for which Defendants allegedly failed to compensate them.  The Court finds this is sufficient to establish that venue is proper in this District under Section 1391.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); see generally Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (holding that the purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense") (quotations omitted).  The decision to transfer a case under Section 1404(a) rests within the Court's sound discretion.  See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 654-55 (11th Cir. 1993) (reviewing district court's transfer of venue for clear abuse of discretion).

Section 1404(a) "requires the court to consider three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice." Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998). The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference," Ricoh Corp., 870 F.2d at 573, and the moving party bears the burden of establishing that the balance of Section 1404(a) interests favors the transfer. Moore, 41 F. Supp. 2d at 1356 (citing In re Ricoh Corp., 870 F.2d 570 (11th Cir. 1989)); Martin, 811 F. Supp. at 687.

Defendants' argument for transfer under Section 1404(a) is anemic. In a single paragraph, Defendants contend that "[a] majority of the witnesses in this action are located in either Florida or Texas," and that "[i]t is highly inconvenient for Defendants to defend this matter in Georgia." (Defs.' Br. in Supp. of Mot. to Dismiss at 19-20.) They do not offer a sufficient credible basis to support these conclusory statements, nor do they bother to identify the alleged key witnesses residing in these States or address the factors to be considered by the Court under the "interests of justice" element of Section 1404(a). Defendants' asserted justification for transferring this case to the Southern District of Florida is

inadequate to overcome the deference accorded to Plaintiffs' choice of this District as its litigating forum.

B.     Non-Party Objections and Defendants' Motions for Protective Order

Consistent with the Court's May 25, 2005 and June 23, 2005 Consent Orders providing for discovery to commence on June 17, 2005, Plaintiffs in late June 2005 served requests for written discovery on Defendants, as well as subpoenas *duces tecum* on various non-parties alleged to have been involved in the acquisition of the Hotel.  Defendants did not respond to this discovery, electing instead to move for a protective order staying all discovery pending the Court's ruling on their Motion to Dismiss and then assuming they were permitted to refuse their discovery obligations.  Defendants then also moved the Court for protective orders relieving the various non-parties of their obligation to comply with the subpoenas, and the various non-parties, represented by the same counsel, filed objections to the subpoenas.  In their motions and objections, Defendants and the various non-parties rely on the same argument; namely, that responding to discovery prior to the Court's ruling on Defendants' Motion to Dismiss would impose an undue burden.  Defendants assert that they did not believe their consent to the discovery-commencement language in the Court's May 25, 2005 and June

-23-

23, 2005 Consent Orders would restrict their ability to seek a stay of discovery after filing their Motion to Dismiss.

Local Rule 26 provides that discovery commences thirty (30) days after the appearance of the first defendant by answer to the complaint, unless the parties mutually consent to begin earlier.  L.R. 26.2A, N.D. Ga.  The Court agrees that, where a defendant files a Rule 12 motion, Local Rule 26 delays discovery until thirty (30) days after the defendant's motion to dismiss is decided and an answer is filed.  Here, however, the parties agreed that discovery could commence earlier, and this agreement was reflected in the May 25, 2005 and June 23, 2005 Consent Orders adopted by the Court.  It is presumptuous for Defendants to argue that, in agreeing to language in two consent orders authorizing the immediate commencement of discovery, they did not imagine that they were giving up the right to move for a stay in the event they responded to the Complaint with a Rule 12 motion.  Nevertheless, the Court is without sufficient factual predicate to determine whether such representations were made during the negotiation of the consent orders and, if so, what measures might be appropriate to remedy their breach.  It is sufficient to hold that the consent orders were clear, and that it was appropriate for Plaintiffs to serve written discovery when they did.  Accordingly, Defendants'

motions for protective order are DENIED, and the various non-parties' objections to the subpoenas are OVERRULED.

To prevent further delay in the processing of discovery in this litigation, the Court directs as follows:

- On or before January 6, 2006, Defendants shall provide substantive answers to Plaintiffs' interrogatories and produce documents and materials responsive to Plaintiffs' requests for the production of documents.

- If Defendants withhold information, documents or materials responsive to Plaintiffs' discovery requests based on an objection, Defendants are required to (1) state such objection with specificity in their discovery responses (i.e., boilerplate objections are not sufficient); and (2) confer in good faith with counsel for Plaintiffs concerning such objection(s) on or before January 20, 2006.

- If the parties are unable to resolve such objection(s) after conferring in good faith, Plaintiffs or Defendants may request the Court to convene a conference to resolve this discovery dispute.

- Defendants may not initiate discovery until January 30, 2006.

- On or before January 6, 2006, the non-parties subject to subpoena in this case shall produce and permit inspection and copying of the documents or objects described in the respective subpoenas.  To the extent the non-parties object to a subpoena on any of the grounds set out in Rule 45 of the Federal Rules of Civil Procedure, they must serve such written objection to Plaintiffs on or before December 30, 2005.  Pursuant to Rule

45, Plaintiffs may move for an order to compel production at any time thereafter.

•   Discovery in this matter shall expire on May 30, 2006.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or Transfer Venue [20] is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is **GRANTED** with respect to Plaintiffs' claim for fraud against all Defendants (Count II) and with respect to their conspiracy claims as set out in Section II(A)(1)(c).  Defendants' motion is **DENIED** with respect to Plaintiffs' other claims.

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order for Purpose of Staying Discovery [24], Defendants' Motion for Protective Order Relating to Subpoena *Duces Tecum* to Freemont Realty Capital [28], and Defendants' Motion for Protective Order Relating to Subpoena *Duces Tecum* to FSPP II Georgian Lender [29] are **DENIED**, and that Non-Party Fremont Realty Capital's Objection to Subpoena *Duces Tecum* [26], Non-Party FSPP II Georgian Lender's Objection to Subpoena *Duces Tecum* [27], and Non-Parties Greenberg

Traurig, P.A., Greenberg Traurig, Mark Bideau, Howard Bregman and David

Layman's Objection to Subpoena *Duces Tecum* [30] are **OVERRULED**.

Discovery in this case shall proceed as outlined above.

      **SO ORDERED**, this 15th day of December, 2005.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE