IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BMC-THE BENCHMARK
MANAGEMENT COMPANY, et al.,

                    Plaintiffs,

     v.                                  1:05-cv-1149-WSD

CEEBRAID-SIGNAL
CORPORATION, et al.,

                    Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff BMC-The Benchmark

Management Company's ("Plaintiff") Motion to Dismiss, or, Alternatively, for

Partial Summary Judgment ("Plaintiff's Motion to Dismiss") [52],[1] Plaintiffs'

Motion for Leave to File Amended Complaint [102],[2] Plaintiffs' Motion for Leave

to File Pleadings Under Seal [103], Plaintiffs' Amended Motion for Leave to File

---

[1] Plaintiff also requests the Court to hold a telephonic hearing on its motion [53]. After reviewing the parties' submissions, the Court finds a hearing is not necessary and denies Plaintiff's request.

[2] Both Plaintiff and BMC-The Benchmark Equipment Company are plaintiffs in this action. The motion to dismiss or for partial summary judgment is brought only by Plaintiff. Plaintiffs' other motions are brought by both Plaintiff and BMC-The Benchmark Equipment Company (collectively "Plaintiffs").

Pleadings Under Seal [104], Defendants' Motion for Rule 16 Pretrial Conference [110] and Plaintiffs' Motion for Extension of Discovery and Pretrial Dates [114].

## I.   <u>BACKGROUND</u>

Plaintiff is a hotel management company.  On August 30, 2002, Plaintiff and AGL Investments No. 2 Limited Partnership ("AGL") entered into an agreement (the "AGL Agreement") for the management of the Georgian Terrace Hotel in Atlanta, Georgia (the "Hotel"), which was owned by AGL.  (Compl. ¶ 11; Pl.'s Statement of Material Facts ("PSMF") ¶ 1; Defs.' Statement of Add'l Material Facts ¶ 1.)

In August 2004, AGL agreed to sell the Hotel to Defendant Ceebraid Acquisition Corporation, a subsidiary of Defendant Ceebraid-Signal Corporation ("Ceebraid").  (Compl. ¶ 13.)  Defendants Richard and Adam Schlesinger are owners and officers of the Ceebraid companies.

In the Summer and Fall 2004, Ceebraid approached Plaintiff concerning its continued management of the Hotel after it was purchased from AGL.  (Compl. ¶ 16.)  On November 1, 2004, Plaintiff alleges it entered into an agreement with Ceebraid to manage the Hotel for six months following the anticipated date of the sale of the Hotel.  (Compl. ¶¶ 17-18.)

2

Plaintiff alleges the AGL Agreement was entered into based on Ceebraid's representation that it would negotiate a long-term management agreement with Plaintiff.  Ceebraid's acquisition of the Hotel was delayed until March 2005.  On March 18, 2005, the Hotel was acquired by Defendant CSC Georgian Terrace Limited Partnership ("Georgian").  (Def.'s Statement of Add'l Material Facts ¶ 2; PSMF ¶ 2.)  Plaintiff alleges Georgian was created by the Schlesingers for the purpose of acquiring the Hotel, and that it was substituted for Ceebraid prior to the purchase as a mechanism to breach the Agreement.  After Georgian's purchase of the Hotel, Plaintiff continued to manage the Hotel for Georgian.  (Def.'s Statement of Add'l Material Facts ¶¶ 4, 7.)  In April 2005, Defendants' representatives claimed the new owners of the Hotel are not bound by the November 1, 2004 management agreement.  (Compl. ¶¶ 26-27.)  Based on these representations, Plaintiffs notified Defendants that they would cease management of the Hotel on April 22, 2005.  (Compl. ¶ 28.)

Plaintiffs filed this action on May 2, 2005.  They allege claims against Defendants for (i) fraud in the inducement, (ii) fraud, (iii) civil conspiracy, (iv) aiding and abetting fraud, and (v) unjust enrichment.  Plaintiffs seek compensatory damages, punitive damages and attorneys' fees and expenses of litigation.

3

On December 30, 2005, Defendants filed their Answer and Georgian filed its Counterclaim.  Georgian alleges Plaintiff drafted and distributed letters to clients of the Hotel advising the clients that Plaintiff would no longer be managing the Hotel and "calling into question whether the Hotel could or would perform the contracted for events."  (Counterclaim ¶ 4.)  Georgian asserts counterclaims against Plaintiff for (i) breach of agency and (ii) breach of fiduciary duty.

## II.   <u>DISCUSSION</u>

    A.   <u>Plaintiff's Motion to Dismiss, or, Alternatively, for Partial Summary Judgment</u>

On January 5, 2006, Plaintiff filed its motion to dismiss, or, alternatively, for partial summary judgment, with respect to Georgian's Counterclaim.

    1.   *Applicable Standards*

The law in this Circuit governing motions to dismiss pursuant to Rule 12(b)(6) is well settled.  Dismissal of a complaint is appropriate only when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.  <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).  "Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal

4

pleading standard does exist." Wagner v. Daewoo Heavy Indus. Am. Corp., 289

F.3d 1268, 1270 (11th Cir. 2002), vacated on other grounds, 314 F.3d 541 (11th

Cir. 2002) (en banc).  "To survive a motion to dismiss, plaintiffs must do more

than merely state legal conclusions; they are required to allege some specific

factual bases for those conclusions or face dismissal of their claims." Jackson v.

BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory

allegations, unwarranted deductions of facts or legal conclusions masquerading as

facts will not prevent dismissal.") (citations omitted).  The allegations are accepted

as true for the purposes of the motion to dismiss.  See Lotierzo v. Woman's World

Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).

Plaintiff moves in the alternative for partial summary judgment.  Summary

judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party

seeking summary judgment bears the burden of demonstrating the absence of a

genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d

1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-

movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

> 2.  *Plaintiff's Motion to Dismiss or for Partial Summary Judgment*

Plaintiff argues that Georgian has expressly denied any contractual

6

relationship with Plaintiff, and, therefore, cannot assert a claim for breach of an agency relationship because none existed.  (Pl.'s Mot. to Dismiss at 2, 4.)  Plaintiff also claims it is undisputed the AGL Agreement created an independent contractor relationship between Plaintiff and AGL, and, therefore, the AGL Agreement precludes the existence of an agency relationship between Plaintiff and Georgian. (Pl.'s Mot. to Dismiss at 3.)

Georgian claims it specifically alleges that an agency relationship between Plaintiff and Georgian existed because of Plaintiff's actual management of the Hotel.  (Georgian's Resp. to Pl.'s Mot. to Dismiss at 4-5; Counterclaim ¶ 10.) "Georgian's Counterclaim is premised on the existence of an implied agency relationship between [Plaintiff] and Georgian by reason of [Plaintiff]'s management of the Hotel during Georgian's ownership of it."  (Georgian's Resp. to Pl.'s Mot. to Dismiss at 8.)  Georgian argues the agency relationship is implied and is not dependent on an express agreement.  (Id. at 8-9.)  Georgian argues in the alternative that, assuming *arguendo* the relationship between Plaintiff and Georgian was governed by the AGL Agreement, the agreement's characterization of Plaintiff as an independent contractor does not preclude the existence of an agency relationship.  (Id. at 10-11.)

O.C.G.A. § 10-6-1 provides: "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." In <u>Southern Exposition Management Co. vs. Genmar Industries, Inc.</u>, the Georgia Court of Appeals stated: "The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties. Direct evidence of an agency relationship is not required." 551 S.E.2d 830, 832 (Ga. Ct. App. 2001).

Plaintiff contends that an implied agency relationship cannot exist here between Plaintiff and Georgian because it is inconsistent with the express provisions of the AGL Agreement which provide for an independent contractor relationship. (<u>See</u> Pl.'s Reply Br. in Supp. of Mot. to Dismiss.) Assuming Plaintiff is correct that the express terms of the AGL Agreement preclude an implied agency relationship,[3] Plaintiff's argument is dependent on the AGL Agreement governing the relationship between Plaintiff and Georgian after Georgian assumed ownership of the Hotel on March 18, 2005. Plaintiff relies exclusively on paragraph 2 of Defendant's Counterclaim to establish the AGL Agreement's application here. Paragraph 2 states: "Benchmark managed the

---

[3] The Court does not take a position on this argument.

Georgian Terrace hotel (the "Hotel") pursuant to a management agreement, entered into on or about August 30, 2002, between Plaintiffs and [AGL], until vacating the premises on April 22, 2005."  (Counterclaim ¶ 2.)

Georgian's statement in paragraph 2 of its Counterclaim cannot support the weight Plaintiff attempts to place on it.  It is clear that neither Plaintiff nor Georgian interpreted Georgian's position in this litigation to be that the AGL Agreement governed the relationship between the parties from March 18, 2005, until Plaintiff ceased its management of the Hotel.  First, in its motion to dismiss or for partial summary judgment, Plaintiff states:

- The AGL Agreement, to which Georgian is not a party, but upon which Georgian *somehow relies* as the basis for its claims, specifically states that the relationship created thereby between AGL as "Owner" and Benchmark as "Manager" is that of independent contractor, not agent.  (Pl.'s Mot. to Dismiss at 3 (emphasis added).)

- Moreover, the AGL Agreement provides that it can only be assigned by AGL upon sale of the Hotel "on the condition that the assignee shall expressly assume in writing the obligations of Owner arising from and after the date of such sale or conveyance. Georgian has not alleged that it is such an assignee under the AGL Agreement.  *In fact, Georgian has*

> *expressly denied any contractual relationship with*
> *Benchmark.* (Id. at 3 (citation omitted) (emphasis
> added).)

Second, it is undisputed that the AGL Agreement was never expressly assigned to

Georgian upon its purchase of the Hotel. (Def.'s Statement of Add'l Material

Facts ¶ 6.) Plaintiff claims this fact is not material but does not deny it. Third,

Georgian states in its Counterclaim that the agency arises out of Plaintiff's role as

manager of the Hotel; Georgian does not claim the agency arises out of the AGL

Agreement. (Counterclaim ¶ 10.) Finally, Georgian clearly states its position that

the AGL Agreement does not govern the relationship between Georgian and

Plaintiff, and, in fact, Georgian's theory of the case is that there was no binding

relationship between the parties. (See Georgian's Resp. to Pl.'s Mot. to Dismiss at

10 ("Assuming arguendo the Agreement did govern the relationship between

Georgian and Benchmark . . . .").)

    At this stage of the proceedings, because Plaintiff has not demonstrated the

AGL Agreement governed the relationship between Plaintiff and Georgian, the

express terms of the AGL Agreement cannot preclude an implied agency

relationship between the parties. The Court has carefully reviewed the allegations

in this case, the evidence of record, and the arguments of the parties. Taking the

allegations as true and viewing the facts in the light most favorable to Georgian,

the Court finds the allegations are that Plaintiff undertook the management and

operation of the Hotel on behalf of Georgian after Georgian assumed ownership of

the Hotel.  Because Georgian has adequately pleaded the existence of an implied

agency relationship and Plaintiff has failed to demonstrate the absence of a genuine

dispute of fact on this issue, Plaintiff's Motion to Dismiss, or, Alternatively, for

Partial Summary Judgment is DENIED.

> B.     Plaintiffs' Motion for Leave to File Amended Complaint

On March 6, 2006, Plaintiffs moved to amend their Complaint to add as

defendants, and to assert a claim for tortious interference against, Fremont Realty

Capital, L.P., FSPP II Georgian L.L.C., Fremont Strategic Partners II, L.P., FSPP

II Georgian Lender, L.L.C. (collectively "Fremont"), and Frederick P. Zarrilli

("Zarrilli"), the Managing Director of Fremont Realty Capital, L.P.  Plaintiffs also

move to add a claim for breach of contract against the original Defendants, to add

Georgian Terrace GP Corporation, the general partner of Georgian Terrace Limited

Partnership, as a defendant, and to alter certain allegations of fact.[4]  Plaintiffs claim

---

[4] Plaintiffs moved to seal its memorandum in support of its motion to amend and its proposed Amended Complaint.  Plaintiffs, at this time, have filed only redacted versions of both documents; the redactions affect only paragraph 28 of the

these amendments are based on information that was unknown to Plaintiffs at the time the original complaint in this matter was filed.

Rule 15 of the Federal Rules of Civil Procedure provides that, once a responsive pleading has been served, a party may amend its complaint only by leave of court or by written consent of the adverse party.  Fed. R. Civ. P. 15(a). Although Rule 15 requires that leave to amend "shall be freely given when justice so requires," the Eleventh Circuit has instructed that "a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment."  Maynard v. Bd. of Regents of Div. of Univs., 342 F.3d 1281, 1287 (11th Cir. 2003) (holding that district court did not abuse its discretion in denying a motion to amend filed on last day of the discovery because granting the motion "would have produced more attempts at discovery, delayed disposition of the case,  . . . likely prejudiced [the adverse party], [and] . . . there seems to be no good reason why [the movant] could not have made the

---

Amended Complaint and the corresponding information in the memorandum. Plaintiffs moved to seal these documents because Fremont designated the underlying information as "Attorneys Eyes Only," and did not consent to removal of this designation.  (Pls.' Mot. to Seal at 2.)  The Court will not require Plaintiffs to file the unredacted versions of its documents at this time.  Instead, the Court requires Fremont to show cause within twenty days of this Order why the information is entitled to protection.

motion earlier."); Fed. R. Civ. P. 15(a).

        1.    *Defendants' opposition*

Defendants argue Plaintiffs' amendments will unnecessarily expand the scope of and unduly delay these proceedings.  Plaintiffs claim their motion is timely because they moved immediately after discovering the grounds for their additional claims.

Plaintiffs moved to amend their complaint "within days of completion of the depositions which form the basis of the amended complaint" and with more than two months remaining in discovery.  (Pls.' Mot. to Amend at 11.)  Defendants claim the addition of five new defendants[5] and new claims will unduly delay the proceedings.  The Court acknowledges the amendments will prolong the litigation.  However, the Court observes that the allegations Plaintiffs seek to assert and the additional defendants Plaintiffs seek to add are calculated to allow a jury to consider the relative role of all of the entities and individuals in this complex series of transactions and relationships in which Plaintiffs allege significant and troubling behind-the-scenes motivations.  These intertwined relationships ought to be

---

[5]  It is clear that Plaintiffs seek to add, in essence, only one new defendant, and the addition of five total defendants is necessitated by the complex corporate structures created by the existing and proposed defendants.

evaluated in one proceeding.  Thus, while there may be delay, it would not be undue.  Furthermore, the Court will impose a schedule which will ensure the orderly and efficient further processing of the case for trial.

Defendants also claim Plaintiffs are attempting to add new issues to the case at a time when "Defendants have requested assistance from the Court to facilitate settlement."  (Defs.' Resp. to Pls.' Mot. to Amend at 5.)  Defendants filed their Motion for Rule 16 Pretrial Conference concurrently with their response to Plaintiffs' motion to amend.  Defendants request the conference because the "possibility of settlement would be greatly enhanced if the Court advised the parties as to the measure of damages it would likely apply in this case."  (Defs.' Mot. for Rule 16 Pretrial Conference at 1.)

A Rule 16 conference is premature.  The issues to be litigated in this case will not be fully developed until the completion of discovery and summary judgment briefing.

### 2.    *Non-party defendants' opposition*

Under Georgia law, to recover under a theory of tortious interference with contractual or business relations, a plaintiff must establish the defendant is a stranger to the contract or business relationship at issue.  Non-parties Fremont and

Zarrilli (the "non-party defendants")[6] argue that Plaintiffs' proposed tortious interference claim fails as a matter of law because the non-party defendants were not strangers to the contractual or business relationship between Plaintiffs and Defendants.[7]  Because the proposed claim fails as a matter of law, the non-party defendants argue that Plaintiffs' amendment should be denied because it is futile.

The elements for tortious interference with contractual or business relations are:  "(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage

_____

[6]  The non-party defendants move to intervene in this action for the limited purpose of opposing Plaintiffs' motion to amend the complaint.  (Non-party Defs.' Opp'n to Pls.' Mot. to Amend at 1 n.1.)  The Court will consider the non-party defendants' arguments.

[7]  The non-party defendants also argue the proposed claim is inconsistent with Plaintiffs' original complaint because the original complaint claims Defendants intended not to enter a management agreement with Plaintiffs, while the amended complaint claims the non-party defendants induced Defendants not to enter into a management agreement.  Here, the alleged inconsistencies do not bar amendment.  See Fed. R. Civ. P. 8(e) ("A party may also state as many separate claims or defenses as the party has regardless of consistency . . . .").

to the plaintiff." <u>Dalton Diversified, Inc. v. AmSouth Bank</u>, 605 S.E.2d 892, 897-

98 (Ga. Ct. App. 2004).  In <u>Dalton</u>, the court held "if the defendant has a legitimate

economic interest in either the contract or a party to the contract, then the

defendant is not a stranger to the contract and acts with privilege. . . .  [T]hus, all

parties to an interwoven contractual arrangement cannot be liable for tortious

interference with any of the contracts or business relationships that underlie such

contractual arrangement."  <u>Id.</u> at 898 (holding that "[t]he actions by a secured

creditor exercising its contractual rights does not constitute the wrongful improper

conduct necessary for this tort action").

 Plaintiffs claim the non-party defendants "tortiously interfered with the

Letter Agreement and/or Benchmark's reasonable anticipation of receiving a long

term management agreement for the Hotel by inducing the [Defendants] to breach

their obligations . . . ."  (Am. Compl. ¶ 75.)  Plaintiffs allege "during the[] relevant

time periods and prior to filing the Complaint in this action, Fremont was playing

the key role behind the scenes to cause the Ceebraid Defendants to repudiate the

Letter Agreement and their obligation to use best efforts to negotiate a long term

management agreement with Benchmark."  (Pls.' Mot. to Amend at 7.)

 The non-party defendants' relationship to Defendants is as lender to the

Hotel, investor in the entities that purchased the Hotel and an advisor to the lender and investor.  (Non-party Defs.' Opp'n to Pls.' Mot. to Amend at 7.)  The non-party defendants claim this relationship is sufficient to establish they are not strangers to the business relationship between Plaintiffs and Defendants in which they allegedly interfered.  The Court disagrees.  Viewing the allegations in the light most favorable to Plaintiffs, the non-party defendants were not parties to the agreement between Plaintiffs and Defendants to manage the Hotel, and the non-party defendants' alleged interference with Plaintiffs' rights occurred before the non-party defendants became part of the interwoven contractual arrangement between the parties.  (See Am. Compl. ¶¶ 28, 35-36, 74-75.)  At this stage of the litigation, it simply is not possible to determine whether the non-party defendants had a privileged relationship with the parties at the time of the alleged interference to find as a matter of law that they were not strangers to the relationship.  See Dalton Diversified, Inc., 605 S.E.2d at 897.  Accordingly, the Court finds Plaintiffs' proposed amendment is not futile.[8]  The non-party defendants may raise this argument again once the facts in this case are more fully developed.

---

[8] The non-party defendants also claim Plaintiffs unduly delayed in moving to amend their complaint.  For the reasons stated *supra*, the Court disagrees.

17

C.    Plaintiffs' Motion for Extension of Discovery and Pretrial Dates

On April 5, 2006, Plaintiffs moved for an extension of discovery and other pretrial dates in this case.  Plaintiffs request the Court to issue an order suspending pending deadlines in this case, including the end of discovery.  Defendants do not consent to the relief requested in Plaintiffs' motion.

Discovery in this case was scheduled to end on May 30, 2006.  (Dec. 15, 2005 Order [45] at 26.)  However, the Court perceives that one or more parties effectively imposed a stay of discovery pending a determination by the Court of the matters addressed in this Order.  Ultimately, the Court concludes further discovery is appropriate and thus will permit an extension of discovery.  To prevent further delay in this action, the Court directs as follows:

- •    Discovery in this matter shall end on October 25, 2006.

- •    The parties shall file their respective motions for summary judgment, if any, on or before November 15, 2006.

The Court does not anticipate granting any extensions of these deadlines. See L.R. 26.2(B), N.D.Ga. (providing extension of time for discovery will be granted only in exceptional circumstances).

III.   **CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiff BMC-The Benchmark

Management Company's Motion to Dismiss, or, Alternatively, for Partial

Summary Judgment [52] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Telephonic

Hearing on Plaintiff's Motion to Dismiss, or, Alternatively, for Partial Summary

Judgment [53] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File

Amended Complaint [102] is **GRANTED**.  The Clerk is **DIRECTED** to file

Plaintiffs' Amended Complaint, attached as Exhibit A to Plaintiffs' Motion for

Leave to File Amended Complaint, as of the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motions for Leave to File

Pleadings Under Seal [103, 104] are **DENIED**.  Fremont is hereby ordered to show

cause within twenty (20) days of this Order why Plaintiffs' Amended Complaint

and memorandum in support of Plaintiffs' motion for leave to file amended

complaint should be filed under seal.

**IT IS FURTHER ORDERED** that Defendants' Motion for Rule 16 Pretrial Conference [110] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Extension of Discovery and Pretrial Dates [114] is **GRANTED**.  The remaining discovery and proceedings in this case shall proceed as outlined above.

**SO ORDERED** this 1st day of August, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE