IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BMC-THE BENCHMARK MANAGEMENT COMPANY, et al., <br><br>             Plaintiffs, <br><br>     v. <br><br> CEEBRAID-SIGNAL CORPORATION, et al., <br><br>             Defendants. | 1:05-cv-1149-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendants Fremont Realty Capital, L.P. ("Fremont Realty Capital"), FSPP II Georgian, L.L.C. ("FSPP II Georgian"), Fremont Strategic Property Partners II, L.P. ("Fremont Strategic"), FSPP II Georgian Lender, L.L.C. ("FSPP II Georgian Lender") (collectively "the Fremont Defendants") and Defendant Frederick Zarrilli's Motion to Dismiss [145], Plaintiffs' Motion for Leave to File Supplemental Affidavits [173],[1] Defendant

---

[1] Plaintiffs request permission to file supplemental affidavits by a professional process server responding to an affidavit submitted by Defendants in their Reply to Defendants' Motion to Dismiss. For reasons discussed in this Order, it is unnecessary to consider the affidavits because Plaintiffs remedied any issue regarding proper service of process. Because the motion is unopposed, however, it is **GRANTED**.

1

Zarrilli's Renewal of Motion to Dismiss [186], and the Fremont Defendants' Renewal of Motion to Dismiss [189].

## I.     BACKGROUND

Plaintiffs in this action are BMC-The Benchmark Management Company ("Benchmark"), a hotel management company, and BMC-The Benchmark Equipment Company ("Benchmark Equipment"), a supplier of hotel equipment and in-room amenities.[2]  On August 30, 2002, Benchmark and AGL Investments No. 2 Limited Partnership ("AGL") entered into an agreement (the "AGL Agreement") for the management of the Georgian Terrace Hotel in Atlanta, Georgia (the "Hotel"), which was owned by AGL.  In August 2004, AGL agreed to sell the Hotel to Defendant Ceebraid Acquisition Corporation, a subsidiary of Defendant Ceebraid-Signal Corporation ("Ceebraid").  Defendants Richard and Adam Schlesinger are owners and officers of the Ceebraid companies.  Defendant Frederick P. Zarrilli is Managing Director of Defendant Fremont Realty Capital, L.P., the real estate merchant banking arm of the Fremont Group, a private

---

[2] For purposes of a motion to dismiss, the Court takes Plaintiffs' allegations as true.  Thus, the Court discusses the facts as they are alleged by Plaintiffs in their Complaint.

investment company.[3]

In summer and fall 2004, Ceebraid approached Benchmark concerning its continued management of the Hotel after it was purchased from AGL. On November 1, 2004, Benchmark allegedly entered into an agreement with Ceebraid to manage the Hotel for six months following the anticipated date of the sale of the Hotel (the "Letter Agreement"). Plaintiffs allege Benchmark entered into the AGL Agreement based on Ceebraid's representation that it would negotiate a long-term management agreement with Benchmark. Ceebraid's acquisition of the Hotel was later delayed until March 2005.

Plaintiffs allege that unknown to Benchmark, various negotiations were occurring between the Fremont Defendants, the Ceebraid Defendants, and the Schlesingers throughout the period of November 2004 to March 2004 regarding the Fremont Defendants' potential involvement in the purchase of the Hotel both as a lender and an equity owner. In March 2005, the Fremont Defendants and Zarrilli became aware of and obtained a copy of the Letter Agreement. Plaintiffs allege that the Fremont Defendants and Zarrilli induced the Ceebraid Defendants and the

---

[3] The remaining Fremont Defendants are all subsidiaries or affiliates of Fremont Realty Capital, L.P. and were allegedly involved in making loans to Defendant CSC Georgian Terrace Limited Partnership ("Georgian") to allow it to purchase the Hotel.

Schlesingers to breach their obligations under the Letter Agreement and caused them to refuse to negotiate in good faith with Benchmark to put in place a long-term management agreement.

On March 18, 2005, Georgian acquired the Hotel. Plaintiffs allege Georgian was created by the Schlesingers for the purpose of acquiring the Hotel, and that it was substituted for Ceebraid prior to the purchase as a mechanism to breach the Agreement. After Georgian's purchase of the Hotel, Benchmark continued to manage the Hotel for Georgian. In April 2005, Richard Schlesinger told Benchmark that Georgian was not bound by the Letter Agreement because Georgian acquired the Hotel rather than Ceebraid. Based on these representations, Benchmark notified Defendants that it would cease management of the Hotel on April 22, 2005.

Plaintiffs filed this action on May 2, 2005, against Ceebraid-Signal Corporation, Ceebraid Acquisition Corporation, Georgian Terrace Limited Partnership, CSC Georgian Terrace Limited Partnership, CSC Georgian Terrace GP Corporation, Georgian Terrace GP Corp., Richard Schlesinger and Adam Schlesinger. They asserted claims for fraud in the inducement, fraud, civil conspiracy, aiding and abetting fraud, and unjust enrichment. Plaintiffs sought compensatory damages, punitive damages, and attorneys' fees and expenses of

litigation.

On December 30, 2005, Defendants filed their Answer and Georgian filed its Counterclaim. Georgian alleges Benchmark drafted and distributed letters to clients of the Hotel advising the clients that it would no longer be managing the Hotel and "calling into question whether the Hotel could or would perform the contracted for events." (Counterclaim ¶ 4.) Georgian asserts counterclaims against Plaintiffs for (i) breach of agency and (ii) breach of fiduciary duty.

On March 6, 2006, Plaintiffs moved to amend their Complaint to add Defendant Zarrilli and the Fremont Defendants as defendants in this action and to assert a claim for tortious interference against them. On August 1, 2006, the Court granted Plaintiff's motion to amend. (August 1, 2006, Order [116].)

On September 25, 2006, Defendant Zarrilli and the Fremont Defendants filed this motion to dismiss the tortious interference claim against them. They argue that: (1) Fremont Strategic should be dismissed for lack of personal jurisdiction; (2) the Fremont Defendants and Defendant Zarrilli should be dismissed for insufficiency of process; and (3) the tortious interference claim should be dismissed for failure to state a claim upon which relief may be granted.

On November 8, 2006, Plaintiffs re-served Zarrilli by personally handing him the summons and Amended Complaint. On November 14 and 15, 2006,

Plaintiffs re-served each of the Fremont Defendants by personally delivering the summonses and copies of the Amended Complaint to each of their respective registered agents. Plaintiffs then asked counsel for Zarrilli and the Fremont Defendants, based on the re-service of process, to withdraw their motion to dismiss to the extent it was based on ineffective service. Instead, Zarrilli and the Fremont Defendants filed Renewals of their Motions to Dismiss on November 29, 2006, and December 4, 2006.[4]

## II.   DISCUSSION

### A.   Standard on Motion to Dismiss

The law in this Circuit governing motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is well-settled. Dismissal of a complaint is appropriate only "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). "Although a plaintiff is not held to a very high standard in a motion to dismiss for

---

[4] In their renewed motions, Defendants state that although Plaintiffs claim that all service issues have been rectified, because Plaintiffs maintain their position that the original service was sufficient, the Fremont Defendants and Zarrilli "have no choice but to preserve all arguments set forth in their original motions, to the extent such arguments are still applicable to the matter." (Fremont Def. Renewal of Mot. to Dismiss [189], at 2.)

failure to state a claim, some minimal pleading standard does exist." Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).

    In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor.  Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citations omitted).  Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

B.   Personal Jurisdiction over Fremont Strategic

Defendant Zarrilli and the Fremont Defendants first argue that Fremont Strategic should be dismissed for lack of personal jurisdiction because Georgia's long-arm statute and the requirements of due process are not satisfied. Where an evidentiary hearing is not held on a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case of jurisdiction to survive a motion to dismiss. Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994). "The court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence." Paul, Hastings, Janofsky & Walker v. City of Tulsa, Okla., 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002) (citations omitted). "Where there are conflicts between the parties' evidence, the court makes all reasonable inferences in favor of the plaintiff." Id.

"In a diversity action, a federal court has personal jurisdiction over a non-resident defendant to the extent permitted by the forum state's long-arm statute." Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 746 (11th Cir. 2002). "In the Eleventh Circuit, a determination of personal jurisdiction requires consideration of both the Georgia long-arm statute and the Due Process Clause of the United States Constitution." Paul, Hastings, 145 F. Supp. 2d at 1253. In Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank, 279 Ga. 672

(2005), the Georgia Supreme Court reiterated that "the rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." Innovative, 279 Ga. at 673.

The Georgia long-arm statute provides in pertinent part that a court:

> may exercise personal jurisdiction over any nonresident . . ., as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state . . . ,
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state **if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state**;
>
> (4) owns, uses, or possesses any real property situated within this state;

O.C.G.A. § 9-10-91 (emphasis added). The Innovative court explained that while under subsection (2), a Georgia court may exercise personal jurisdiction over a nonresident "insofar as the exercise of that personal jurisdiction comports with

9

constitutional due process," subsection (3) is different. Innovative, 279 Ga. at 674. It held that under subsection (3), "a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious injury in Georgia caused by an act or omission outside Georgia only if the tortfeasor 'regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.'" Id. The Supreme Court emphasized that this was required "notwithstanding that these limiting conditions may preclude a Georgia court from exercising personal jurisdiction over the nonresident to the fullest extent permitted by constitutional due process." Id. Thus, subsection (3) of the long-arm statute may be narrower than the requirements of due process.

Fremont Strategic is a Delaware limited partnership with its principal place of business in California. Zarrilli and the Fremont Defendants assert that Fremont Strategic itself has never transacted business in Georgia and does not own property in Georgia. They state that Fremont Strategic has never paid Georgia taxes and does not have an office, registered agent, or employees in Georgia. Plaintiffs respond simply by arguing that a lender who loans money secured by real estate in Georgia is subject to personal jurisdiction there. (Opp. to Mot. to Dismiss [148], at 11.) In their Response, Plaintiffs offer no information or evidence regarding

Fremont Strategic's actual contacts with the State of Georgia that would contradict Fremont Strategic's assertions.

Plaintiffs allege, without differentiating between the Fremont Defendants, that "Fremont" "induc[ed] the Ceebraid Defendants, R. Schlesinger and A. Schlesinger to breach their obligations under the Letter Agreement [and to] refuse to exert their best efforts to negotiate with Benchmark and put in place a long term management agreement . . . ." (Am. Compl., attached as Ex. A to Pl. Mot. to Amend [102], at ¶ 75.)  Plaintiffs also allege that "Defendant [Fremont Strategic] . . . committed to making various loans to CSC and Georgian LP, through a subsidiary of Fremont Strategic . . . in order to allow CSC to purchase the Hotel." (Id. at ¶ 11.)

Plaintiffs' Complaint does not allege that Fremont Strategic transacts any business within Georgia, owns any property within Georgia, or committed any tortious conduct within Georgia.  In arguing that Fremont Strategic can be subject to personal jurisdiction for making loans secured by property in Georgia, Plaintiffs appear to rely on subsection (3) of the Georgia long-arm statute, which allows personal jurisdiction over a nonresident defendant who, through actions taken outside the state, causes an injury within Georgia.  Plaintiffs, however, ignore the second requirement of subsection (3), and thus cannot establish that personal

11

jurisdiction exists over Fremont Strategic.[5]

As previously discussed, under subsection (3), Fremont Strategic can be subject to personal jurisdiction for committing a tortious injury in Georgia caused by an act or omission outside Georgia only if it "*regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state*." O.C.G.A. § 9-10-91 (emphasis added). Plaintiffs have not alleged in their Amended Complaint, and do not offer evidence in response to the Fremont Defendants' motion, that Fremont Strategic regularly does or solicits business in Georgia, engages in a persistent course of conduct in Georgia, or derives substantial revenue from services rendered in Georgia. Thus, Plaintiffs have failed to satisfy the requirements of the Georgia long-arm statute for personal jurisdiction over Fremont Strategic.[6] Defendant Zarrilli and the Fremont Defendants' Motion

---

[5] Plaintiffs' argument is also problematic because Plaintiffs actually allege that a subsidiary of Fremont Strategic made the loans–not Fremont Strategic itself. (Am. Compl., at ¶ 11.)

[6] Although it is unnecessary for the Court to spend time analyzing whether Fremont Strategic would be subject to specific jurisdiction under the requirements of due process, the Court notes that Plaintiff also has failed to show that due process is satisfied here. In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), the Supreme Court explained that a nonresident defendant may be subject to personal jurisdiction when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court

to Dismiss Fremont Strategic is therefore granted for lack of personal jurisdiction.[7]

    C.    <u>Sufficiency of Process</u>

Zarrilli and the Fremont Defendants also argue that Plaintiffs did not comply with Federal Rule 4 when they served Zarrilli and the Fremont Defendants by hand-delivering a copy of the Summons and Amended Complaint to a receptionist for Fremont Realty Capital in the lobby of Fremont's office building in New York. They argue that because Plaintiffs did not serve Zarrilli personally or at his home or usual place of abode, and did not deliver a copy of the summons and Complaint to an officer, managing or general agent, or other agent authorized to receive service of process on behalf of the Fremont Defendants, service was improper. <u>See</u> Fed. R. Civ. P. 4(e), (h).

Although Plaintiffs took the position that the original service was sufficient,

---

there." To establish specific jurisdiction over a nonresident defendant, Plaintiff must show the defendant: (1) has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." <u>Paul, Hastings,</u> 245 F. Supp. 2d at 1253. Plaintiff has not made such a showing here.

   [7] In their response to the motion to dismiss, Plaintiffs ask the Court to defer any ruling on personal jurisdiction until it can depose Fremont on Fremont Strategic's role in the loan transaction. (Opp. to Mot. to Dismiss, at 11-12.) The Court declines to do so. Plaintiffs had the opportunity to submit affidavits or other evidence regarding Fremont Strategic's business contacts and connections with the State of Georgia, yet chose not to do so.

Plaintiffs re-served Zarrilli and the Fremont Defendants. On November 8, 2006, Plaintiffs re-served Zarrilli by handing a copy of the summons and Complaint to him personally. On November 14 and 15, 2006, Plaintiffs re-served the Fremont entities through their registered agents in New York. Plaintiffs then asserted that any service shortcomings were rectified and asked Zarrilli and the Fremont Defendants to abandon their arguments regarding insufficient service in order to save the time and resources of the Court. Because Plaintiffs maintained that their original service was sufficient, Zarrilli and the Fremont Defendants refused to abandon their arguments regarding the sufficiency of original service and refused to concede that service is now sufficient.

In their Renewed Motions to Dismiss, Zarrilli and the Fremont Defendants do not challenge the sufficiency of Plaintiffs' re-service–they simply state that they "have no choice but to preserve all arguments set forth in their original motions, to the extent such arguments are still applicable to this matter." (Fremont Def. Renewal of Mot. to Dismiss [189], at 2.) The Court finds that those arguments no longer apply. Because Plaintiffs have re-served Zarrilli and the Fremont Defendants in accordance with Rule 4(e) and (h), and because Plaintiffs do not challenge the sufficiency of the re-service, the Court finds that service is sufficient, and it is unnecessary to consider the parties' arguments regarding sufficiency of the

14

original service.

      D.    <u>Failure to State a Claim for Tortious Interference</u>

Finally, Zarrilli and the Fremont Defendants argue that Plaintiffs' claim for tortious interference against them should be dismissed for failure to state a claim. They argue that a claim for tortious interference does not arise under Georgia law where a defendant is not a stranger to the contract. Zarrilli and the Fremont Defendants argue that since they had a direct economic interest in the contract and are not strangers to the contract, the tortious interference claim must be dismissed.

The Court already ruled on this issue in its Opinion and Order of August 1, 2006, granting Plaintiffs' motion to amend their Complaint. In opposition to the Amended Complaint, Zarrilli and the Fremont Defendants, who were non-parties at the time, argued that because the proposed claim failed as a matter of law, Plaintiffs' proposed amendment was futile. The argument Zarrilli and the Fremont Defendants make here is identical.

The elements for tortious interference with contractual or business relations are: "(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with

the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." Dalton Diversified, Inc. v. AmSouth Bank, 605 S.E.2d 892, 897-98 (Ga. Ct. App. 2004).  In Dalton, the court held "if the defendant has a legitimate economic interest in either the contract or a party to the contract, then the defendant is not a stranger to the contract and acts with privilege. . . .  [T]hus, all parties to an interwoven contractual arrangement cannot be liable for tortious interference with any of the contracts or business relationships that underlie such contractual arrangement."  Id. at 898 (holding that "[t]he actions by a secured creditor exercising its contractual rights does not constitute the wrongful improper conduct necessary for this tort action").

Zarrilli and the Fremont Defendants acted as lender to the Hotel, investor in the entities that purchased the Hotel, and advisor to the lender and investor.  As explained in the August 1, 2006, Order, this Court disagrees that this relationship is sufficient to establish Zarrilli and the Fremont Defendants are not strangers to the business relationship in which they allegedly interfered.  This Court held that "[v]iewing the allegations in the light most favorable to Plaintiffs, [Zarrilli and the Fremont Defendants] were not parties to the agreement between Plaintiffs and [the original defendants] to manage the Hotel, and [Zarrilli and the Fremont Defendants'] alleged interference with Plaintiffs' rights occurred before [they]

became part of the interwoven contractual arrangement between the parties." (August 1, 2006, Order [116], at 17.)  Considering only the allegations in Plaintiffs' Amended Complaint, it simply is not possible to determine whether Zarrilli and the Fremont Defendants had a privileged relationship with the parties at the time of the alleged interference.  As the Court noted in its August 1, 2006, Order, this issue is more properly addressed at the summary judgment stage.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Fremont Defendants and Defendant Zarrilli's Motion to Dismiss [145] is **GRANTED in PART** and **DENIED IN PART**.  Defendant Fremont Strategic is dismissed from this action for lack of personal jurisdiction.  The remainder of Defendants' Motion is **DENIED**.  Plaintiff's Motion for Leave to File Supplemental Affidavits [173] is **GRANTED**; Defendant Zarrilli's Renewal of Motion to Dismiss [186] is **DENIED AS MOOT**, and the Fremont Defendants' Renewal of Motion to Dismiss [189] is **DENIED AS MOOT.**

**SO ORDERED** this 13th day of June, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE