IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BMC-THE BENCHMARK MANAGEMENT COMPANY, et. al., | |
| **Plaintiffs,** | |
| v. | **1:05-cv-1149-WSD** |
| CEEBRAID-SIGNAL CORPORATION, et. al., | |
| **Defendants.** | |

<u>**OPINION AND ORDER**</u>

This matter is before the Court on Defendants' Second Motion for Partial Summary Judgment as to Fraud [266] and Plaintiffs' Motion for Leave to File Sur-Reply [277].[1]

**I.      BACKGROUND**

Plaintiff BMC-The Benchmark Management Company ("BMC") is a hotel management company.  On August 30, 2002, BMC and entered into an

---

[1]  Having reviewed the submissions, the Court finds that Defendants raised substantial new arguments in their reply brief.  Plaintiffs' Motion for Leave to File a Sur-Reply [277] is therefore **GRANTED**.

agreement to manage the Georgian Terrace Hotel in Atlanta, Georgia (the "Hotel"),

owned by AGL Investments No. 2 Limited Partnership ("AGL").

In August of 2004, AGL agreed to sell the Hotel to Defendant Ceebraid

Acquisition Corporation, a subsidiary of Defendant Ceebraid-Signal Corporation

(collectively, "Ceebraid"). During the summer and fall of 2004, Ceebraid began

discussions with BMC regarding its continued management of the Hotel. Ceebraid

asked BMC to manage the Hotel on a short-term basis. BMC refused, stating it

was only interested in a long-term arrangement. On November 1, 2004, Ceebraid

and BMC signed a letter memorializing their intent to enter into a long-term

agreement for BMC's management services ("Letter Agreement"). The Letter

Agreement provided that BMC would continue to manage the Hotel for six months

while Ceebraid finalized its purchase of the Hotel.

BMC also alleges the existence of an additional oral agreement preceding

the Letter Agreement. BMC alleges that, prior to the Letter Agreement, it entered

into oral discussions with Ceebraid concerning managing the Hotel. BMC alleges

that as a result of those discussions, Ceebraid officials "promised that [BMC] could

continue managing the Hotel for a minimum of 5 years for a minimum fee of

$360,000, and that they would execute a written contract evidencing the long-term

-2-

deal." (BMC's Resp. to Defs. Statement fo Material Facts at ¶ 5.) BMC argues that it relied on this oral agreement (the "Oral Agreement") in entering into the Letter Agreement and in continuing to deal with Defendants.

In the fall of 2004, Fremont Realty Capital, L.P. ("Fremont") decided to invest in Ceebraid's purchase of the Hotel. Fremont became a significant creditor and investor in Ceebraid's acquisition, signing a letter of intent confirming its participation on March 4, 2005.

During this time, Ceebraid developed a business plan for the Hotel. Ceebraid anticipated shutting the Hotel down for approximately four months after the acquisition, then engaging in one year of renovations, with the goal of reopening the Hotel as a luxury boutique hotel with condominiums for sale. As early as January 2005, Ceebraid initiated negotiations with hotel management companies other than BMC for the Hotel's future management. Ceebraid intended to use BMC to manage the Hotel for the period prior to the renovation phase, including during the four-month shutdown.

A few days before Ceebraid closed on the Hotel purchase, Fremont learned of the Letter Agreement. Fremont considered BMC's potential long-term management of the Hotel unacceptable and inconsistent with the business plan. At

the urging of Fremont, Ceebraid altered the purchase agreement.  Defendants

Richard and Adam Schlesigner, who are owners and officers of Ceebraid, formed

Defendant CSC Georgian Terrace Limited Partnership ("CSC").[2]  The Hotel

purchase agreement was modified to substitute CSC for Ceebraid.  On March 18,

2005, CSC, not Ceebraid, acquired the Hotel.

   During and after CSC's acquisition of the Hotel, BMC continued to provide

management services.  In April of 2005, CSC notified BMC that it did not intend

to retain BMC beyond the four-month period preceding the hotel renovation.  CSC

asked BMC to sign an agreement to manage the Hotel during that limited period.

BMC refused, reminded CSC of the Letter Agreement, and stated it would cease

providing management services on April 22, 2005.  CSC responded that because

CSC, not Ceebraid, had actually acquired the Hotel, the Letter Agreement was

ineffective.

   On May 2, 2005, BMC filed the present action, alleging claims against

Ceebraid, CSC, Fremont, and individual Defendants for: (i) fraud; (ii) civil

conspiracy; (iii) aiding and abetting fraud; (iv) unjust enrichment; and (v) tortious

---

[2]  Defendants Georgian Terrace Limited Partnership, CSC Georgian Terrace Limited Partnership, CSC Georgian Terrace GP Corporation, and Georgian Terrace GP Corporation are collectively identified as "CSC" for the purposes of this Order.

interference with contract.[3]  The gravamen of BMC's claims is that it relied on the Letter Agreement, which induced it to continue providing management services for the Hotel, when Defendants had no intention of entering into a long-term contract with BMC.

On July 23, 2007, this Court entered an Order deciding motions for summary judgment ("July 23 Order").  The July 23 Order, in relevant part, dismissed BMC's tortious interference claim against the Fremont Defendants and also dismissed BMC's claims for aiding and abetting fraud, unjust enrichment,[4] and breach of contract.  The July 23 Order dismissed the aiding and abetting fraud, unjust enrichment, and breach of contract claims based on findings that: (i) "aiding and abetting fraud" is not a legally cognizable cause of action under Georgia law; (ii) no entity other than CSC was enriched unjustly; and (iii) under Georgia law, the Letter Agreement is an unenforceable "agreement to agree."

---

[3]  BMC amended its complaint on August 1, 2006.  The Amended Complaint added the tortious interference claim and added Fremont and related entities and individuals as defendants.  The Amended Complaint also dropped a fraud by omission claim.

[4]  The unjust enrichment claims were not dismissed as to Defendant CSC.

The July 23 Order did not grant summary judgment dismissing the fraud and civil conspiracy claims.  The Court found that a genuine issue of material fact exists regarding Ceebraid's intent to perform when it executed the Letter Agreement.  The parties' arguments and the Court' analysis in the July 23 Order focused exclusively on the issue of Defendants' fraudulent intent.  Neither the briefing nor the July 23 Order considered other potential issues of law relating to the fraud and civil conspiracy claims.[5]

On September 21, 2007, Defendants Ceebraid, CSC, Richard Schlesinger, and Adam Schlesinger (the "CSC Defendants") filed a Second Motion for Partial Summary Judgment seeking dismissal of BMC's fraud and civil conspiracy claims. The CSC Defendants argue: (i) BMC's fraud claim relies on the Letter Agreement, which has been held unenforceable as a matter of law, and fraud claims cannot rely on an unenforceable promise; and (ii) any other representations on which BMC is basing its fraud claim are improperly before the Court and unenforceable.

## II.   DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions,

---

[5]  The civil conspiracy claim relies wholly on the viability of the fraud claim. If the fraud claim is not viable, the civil conspiracy must necessarily be dismissed.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d

at 1246.  "Where the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no genuine issue for trial."  <u>Scott v.</u>

<u>Harris</u>, 127 S.Ct 1769, 1776 (2007).

The CSC Defendants move for partial summary judgment on the grounds

that BMC's fraud and civil conspiracy claims fail as a matter of law in light of the

Court's July 23 Order, which held the Letter Agreement unenforceable.  The CSC

Defendants' arguments rely on the proposition that an unenforceable promise

cannot give rise to fraud under Georgia law.  BMC argues its claims for fraud are

based on oral representations beyond the Letter Agreement.  BMC alternatively

argues its claims can proceed based on the Letter Agreement alone.

A.    <u>Unenforceable Promises and Fraud Under Georgia Law</u>

As a general rule of Georgia law, claims of fraud cannot arise from

unenforceable agreements.  Such claims "must fail for the simple reason that fraud

cannot be predicated on a promise which is unenforceable at the time it is made."

<u>Albee v. Kransoff</u>, 566 S.2d 455 (2002).  Fraud cannot arise from an unenforceable

contract even if one of the contracting parties had no intention of performing the

agreement at the time it was made.  <u>Pellettier v. Stuart-James Co.</u>, 863 F.2d 1550,

1555-56 (11th Cir. 1989) ("Where a contract is unenforceable, an action for

damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the promisor at the time of making the . . . contract may have had no intention of performing it.").  The principle is well-settled in Georgia courts.  See, Adamson v. Maddox, 142 S.E.2d 313 (Ga. Ct. App. 1965), Bridges v. Reliance Trust Co., 422 SE.2d 277 (Ga. Ct. App. 1992), Reuben v. First Nat. Bank of Atlanta, 247 S.E.2d 504 (Ga. Ct. App. 1978), Beasley v. Ponder, 240 S.E.2d 111 (Ga. Ct. App. 1977).  Georgia courts have specifically held that summary judgment is appropriate to dismiss fraud claims based on unenforceable agreements to agree. Coldmatic Refrigeration of Canada, Ltd. v. Hess, 572 S.E. 2d 6, 8 (Ga. Ct. App. 2002).  See also, Autry v. UAP/GA AG Chem, Inc., 497 S.E.2d 402 (Ga. Ct. App. 1998).

 BMC cites several cases, most notably Buckley v. Turner Heritage Homes, Inc., 547 S.E.2d 373 (Ga. Ct. App. 2001), McCravy v. McCravy, 260 S.E.2d 52 (Ga. 1979, and Pellettier, for the proposition that whenever "a promise as to future events is made with a present intent not to perform . . . there is actionable fraud. (Pls. Resp. at 4.)  These cases do not support BMC's argument.

 In Buckley, the Georgia Court of Appeals affirmed a trial court's grant of summary judgment dismissing a claim for recision based on fraud.  The plaintiff

alleged that the defendant had induced her to buy a home with fraudulent promises to make several improvements after her purchase.  Id. at 375.  Plaintiff signed an integrated purchase contract with a merger clause.  Id.  The integrated contract contained no mention of the improvements.  The promises relating to the improvements were oral, and, because of the merger clause, unenforceable.  Id.

The Georgia Court of Appeals, like this Court in the July 23 Order, looked first to whether plaintiff had shown any evidence of fraudulent intent, and found none in the record.  BMC seeks to introduce the court's analysis as evidence that the unenforceability of the agreement was not relevant to the issue of fraud.  BMC neglects to note, however, that after concluding that there was no evidence of fraud, the court additionally based its holding on the unenforceable nature of the oral promise:

> Since Buckley affirmed the Agreement, [she] is bound by [the contract's] terms and is subject to any defenses which may be asserted by the other party based on the terms of the contract.  As stated earlier, the Agreement contains merger provisions, which preclude Buckley's reliance on Saxon's alleged oral promises. Conversely, the written warranties, pertaining to the pocket door and the blending of the sod, survive the merger clause.  But as discussed above, they provide no basis for a fraud claim because there is no evidence in the record that they

-10-

were provided with the present intent not to perform them.

Id. at 376.

In McCravy, the plaintiff deeded land to his father in reliance on representations that his brothers were transferring their interests to their father to help him obtain a loan, with the understanding that the property interest would be willed back at his father's death.  260 S.E.2d. at 54.  Plaintiff did not receive the land at his father's death, and filed suit for fraud.  The court denied defendants' motion for directed verdict "on the ground that any promises allegedly made . . . were unenforceable promises to perform an act in the future and could not form the basis for an action for fraud."  Id.

The Georgia Supreme Court found that the defendants had made misrepresentations *both* by making unenforceable false promises as to future action and by misrepresenting their present actions.  "The misrepresentation that the appellants were at the same time deeding their interest to the father was a present event, which did not occur.  The jury was authorized to find these misrepresentations to be part of a fraudulent scheme."  Id.  The trial court was affirmed in part because the fraud claim was not predicated solely on an unenforceable agreement.

BMC notes that <u>McCravy</u> states, "While fraud cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is made, the defendant knows that the future event will not take place." <u>Id.</u> (citing <u>Hayes v. Hallmark Apts.</u>, 207 S.E.2d 197 (Ga. 1974), <u>Sutton v. McMillan</u>, 97 S.E.2d 139 (Ga. 1957). BMC argues that because <u>McCravy</u> does not state an "unenforceable agreement" exception to this rule, none exists. As noted above, however, the weight of case authority from Georgia courts suggests that the Georgia Supreme Court in <u>McCravy</u> merely stated the general rule without stating the exception, which was unnecessary to decide that case. A complete statement of the rule and the exception is found in <u>Adamson</u>, which states that the rule:

> [Cannot] be extended to include those cases in which the promise upon which the promisor is charged with fraud is for any reason unenforceable at the time of its utterance. Misrepresentations are not actionable unless the hearer was justified in relying on them in the exercise of common prudence and diligence. It is contrary to common sense to rely upon a promise that is not legally binding upon the person making it.

142 S.E.2d at 315 (citation and quotations omitted).

Georgia Court of Appeals cases cited since <u>McCravy</u> reflect the understanding that <u>McCravy</u> merely stated the rule without the exception, and did

not establish a new rule.  See, e.g., Bridges v. Reliance Trust Co., 422 SE.2d 277

(Ga. Ct. App. 1992), Reuben v. First Nat. Bank of Atlanta, 247 S.E.2d 504 (Ga. Ct.

App. 1978), Beasley v. Ponder, 240 S.E.2d 111 (Ga. Ct. App. 1977), Coldmatic

Refrigeration of Canada, Ltd. v. Hess, 572 S.E. 2d 6, 8 (Ga. Ct. App. 2002), Autry

v. UAP/GA AG Chem, Inc., 497 S.E.2d 402 (Ga. Ct. App. 1998), Burns v. Dees,

557 S.E.2d. 32 (Ga. Ct. App. 32).

Pellettier stands firmly for the proposition that fraud claims cannot be

predicated on an unenforceable agreement.  In Pellettier, defendant promised to sell

plaintiff shares in an initial public offering of stock ("IPO") if he first purchased

other stock shares. Id. at 1553.  The plaintiff complied with the request, but found

that the defendant still refused to sell the IPO shares.  Id.  Plaintiff sued, alleging

fraud under federal securities laws.  Id.

The Eleventh Circuit found, "appellant's theory based on a fraudulent

refusal to perform a contract . . . must fail because the alleged agreement is

unenforceable as a matter of law." Id. at 1555-56.  "Where a contract is

unenforceable, an action for damages cannot be maintained on the ground of fraud

in refusing to perform the contract, even though the promisor at the time of making

the oral contract may have had no intention of performing it."  Id.

-13-

The Eleventh Circuit then considered "a second theory of liability[,] that appellees fraudulently induced appellant to purchase . . . stock from Stuart-James by means of appellees' promise to sell 10,000 units of [stock] to appellant at a later date." Id. at 1556.  The Eleventh Circuit found that this theory "can be the basis of a claim *of securities fraud under Section 10(b) if the promise is part of the consideration for the sale of securities*," but noted that such a theory is "not sufficient to support a common law fraud action . . . ." Id. (emphasis added).  After noting the distinction between Section 10(b) fraud and common law fraud, the Eleventh Circuit stated, "[t]he law is clear that an action for fraud may not be predicated on inducing a party to enter into an unenforceable contract." Id.  See also, Gregg v. U.S. Indus., 715 F.3d 1522 (11th Cir. 1983).

The other cases relied on by BMC simply do not address the legal import of an unenforceable agreement to a fraud claim.  See, e.g., Goodlett v. Ray Label Corp., 319 S.E.2d 533 (Ga. Ct. App. 1984), Brock v. King, 629 S.E.2d 829 (Ga. Ct. App. 2006).[6]  The fact that Georgia courts reached decisions on other grounds

---

[6] Even these cases, although only tangentially relevant, suggest the incorrectness of BMC's position.  Brock relies on Buckley when discussing fraud.  Goodlett states that the trial court erred by refusing to give a charge on the statute of frauds, relevant to the enforceability of the promise at issue, but did not elaborate further or state a rule on this issue.

in these cases does not require the conclusion that an unenforceable promise can

support a claim of fraud, particularly in light of the weight of case law that says

that unenforceable agreements simply cannot form the predicate for a fraud claim.

      B.     <u>Agreements Between BMC and Defendants</u>

      BMC argues that its fraud claim is predicated on both the Letter Agreement

and on the Oral Agreement.  The Court will consider each of these agreements in

turn.

      1.     <u>*The Letter Agreement*</u>

      The July 23 Order held that the Letter Agreement is an unenforceable

agreement to agree.  BMC argues that this Court has not held the Letter Agreement

to be entirely unenforceable, citing footnote 14 of the July 23 Order.  That footnote

states:

> Benchmark does not argue that any other portion [besides
> the "agreement to agree"] of the Letter Agreement is
> enforceable. It only argues that the Letter Agreement is a
> contract for a long term relationship. To the extent
> Plaintiff could have argued the Letter Agreement was at
> least a contract for a six-month term or a requirement for
> the parties to negotiate, that argument has been
> abandoned.

(July 23 Order at 38 n.14.)

The July 23 Order does not, as BMC argues, reserve the possibility that some portion of the Letter Agreement may be enforceable.  It rather states that BMC has abandoned any position except that the Letter Agreement is an agreement to agree, and, as such, it is unenforceable in its entirety.  Because the Letter Agreement is unenforceable, BMC could not justifiably rely on it, and its claim for fraud based on it must be dismissed.[7]

2.    *The Oral Agreement*

BMC argues in the alternative that it relied on the fraudulent Oral Agreement alleged to have led to the formation of the Letter Agreement.  The CSC Defendants argue that there is no basis in the Amended Complaint for a fraud claim based on the Oral Agreement.

Federal Rule of Civil Procedure 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The rule is meant to "alert defendants to the precise misconduct

---

[7] Justifiable reliance is a *prima facie* element of fraud.  <u>Buckley</u>, 547 S.E.2d at 795.  The mere fact that the parties did not brief and the Court did not address this issue in the July 23 Order does not, as BMC argues, operate to establish a right to trial on the fraud issue.  Like the court in <u>McCravy</u>, this Court addressed the arguments as they arose.  While there is an issue of fact on CSC's intentions in forming the Letter Agreement, that issue cannot, under Georgia law, make BMC's unreasonable reliance on an unenforceable promise reasonable.

with which they are charged and protect defendants against spurious charges of immoral and fraudulent behavior." Durham v. Bus Mgmt. Assocs., 847 F.3d 1505, 1511 (11th Cir. 1986). Rule 9(b) "ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . ." Wagner v. First Horizon Pharma. Corp., 464 F.3d 1273, 1277 (11th Cir. 2006). "In cases in which fraud lies at the core of the action, the rule does not permit a complainant to file suit first, and subsequently to search for the cause of action." Haydul v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985). The "clear intent" of Rule 9(b) "is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." Friedlander v. Nims, 755 F.2d 810, 813 n.4 (11th Cir. 1985). "One is not always required to elect a single theory of the factual situation where fraud is claimed, and, at least, where each of two alternative statements independently satisfies the particularity requirement of Rule 9(b), the pleading does not violate that rule solely because the alternatives are stated." Hirshfield v. Briskin, 447 F.2d 694, 697 (7th Cir. 1971).

Throughout this litigation, BMC has represented unequivocally that "Count I is for fraud in the inducement of the [Letter Agreement]. . . ." (BMC's Opp. to Mot. to Dismiss at 2.) BMC now alleges that its fraud claim is based on

the Oral Agreement.  BMC specifically alleges, "CSC promised that [BMC] could continue managing the Hotel for a minimum of 5 years for a minimum fee of $360,000, and that they would execute a written contract evidencing the long-term deal."  (BMC's Resp. to Defs. Statement fo Material Facts at ¶ 5.)

BMC alleges, in essence, that the discovery in this case revealed an materially different representation that gives rise to an alternative theory for its fraud claim.[8]  BMC should have filed a motion for leave to amend its complaint upon discovering the Oral Agreement.  Under Federal Rule of Civil Procedure 16, "good cause" to amend is shown upon the discovery of new material facts.  See, e.g., Millennium Partners, L.P. v. Colmar Storage, LLC, 494 F.3d 1293, 1298-99 (11th Cir. 2007).  BMC made a strategic decision not to move to amend its complaint to plead this new alternative theory of its fraud claim sufficiently under Rule 9(b).  See Smith v. Zant, 887 F.2d 1407, 1438 (11th Cir. 1989).  BMC is necessarily restricted to asserting the theories of fraud it has adequately pled.

---

[8] Given that BMC was a party to the alleged Oral Agreement, the Court is skeptical that BMC's first awareness of it arose during discovery in this case.

BMC's Amended Complaint does not allege any facts sufficient to show the Oral Agreement as one of the circumstances of its alleged fraud.  For example, the Amended Complaint states:

• "[Defendant] requested that Benchmark agree to continue to manage the Hotel *for six months* after [Ceebraid's] purchase of the Hotel while [Ceebraid] finalized its plans for the Hotel. . . . Over the course of approximately six telephone conversations on the subject over a period of several weeks, [BMC] and [Ceebraid] agree that [BMC] would continue to manage the Hotel under the same terms as the existing Management Agreement *for a period of six months* from the date of [Ceebraid's] purchase of the Hotel, during which period *the parties would enter into and use their best efforts to negotiate and put in place a long term management agreement.  As a result of this agreement*, [BMC] drafted and sent . . . [the Letter Agreement] . . . ." (Amd. Compl. ¶ 22) (emphases added).

• "[Ceebraid] promised [BMC] that [BMC] would operate the Hotel for six months after the acquisition of the Hotel by [Ceebraid] and that [Ceebraid] would use its best efforts to negotiate a long term management agreement with [BMC] for the Hotel. [Ceebraid] made these promises with actual

knowledge that [BMC] would not have agreed to a short-term management contract without the substantial likelihood of obtaining a long-term management contract. [Ceebraid] made *these promises* in order to induce [BMC] to continue to manage the Hotel . . . .  In fact, once the *Letter Agreement* was signed, [Ceebraid] failed to return phone calls, and refused to meet with [BMC] or even attempt the negotiation of the long term management agreement.  (Id. at ¶ 43) (emphases added).

• [I]n reliance on the [Letter Agreement's] promise to use best efforts to negotiate a long-term arrangement to manage the Hotel, [BMC] agreed to the Subordination Agreement . . . ." (Id. at ¶ 44.)

BMC, in accordance with Rule 9(b), states with specificity the circumstances of the fraud it alleged against Defendants.  Those circumstances, as pled, involve fraud relating to Defendants' intention not to perform the Letter Agreement.  The Amended Complaint's fraud count does not refer to the Oral Agreement, to a five-year term of service, or to a $360,000 proposed payment.  The Amended

Complaint simply does not state or describe the Oral Agreement as one of the circumstances of fraud.[9]

Aside from the Letter Agreement, BMC shows, at most, that Ceebraid "induced" it to enter into the six-month management arrangement discussed in the Letter Agreement.  Pelletier expressly states that inducement to enter into an unenforceable promise cannot form the basis for a common law fraud claim.  Further, the July 23 Order held that BMC has abandoned every argument relating to the Letter Agreement excepting those arising from its "agreement to agree" provisions, which are unenforceable.

---

[9]  The Amended Complaint does contain some references to fraudulent misrepresentations broad enough to encompass the Oral Agreement.  Paragraphs 42 states that Defendants "intentionally made materially false representations to [BMC] designed to induce [BMC] to operate, and or continue to operate, the Hotel on an interim basis."  Paragraph 47states that Defendants "planned and intended to misrepresent the facts and their intentions to [BMC] in order to induce [BMC] to operate and/or continue to operate, the Hotel only on an interim basis . . . ."  Although these references are broad enough to encompass the Oral Agreement, they are too general to satisfy the specificity requirements of Rule 9(b).  Because these statements do not state the Oral Agreement as one of the circumstances of the fraud alleged, they do not support an alternate theory of fraud based on the Oral Agreement.

III.    **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the CSC Defendants' Second Motion for

Partial Summary Judgment as to Fraud [266] is **GRANTED** on BMC's fraud and

civil conspiracy claims.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Sur-

Reply [277] is **GRANTED**.

**SO ORDERED** this 23rd day of November, 2007.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE